O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CENTURY SATELLITE, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| ECHOSTAR SATELLITE, L.L.C., § | |
| formerly known as ECHOSTAR § | CIVIL ACTION NO. H-04-3243 |
| SATELLITE CORPORATION, § | |
| ECHOSPHERE, L.L.C., MID-STATE § | |
| DISTRIBUTING COMPANY, INC., and § | |
| RECREATIONAL SPORTS AND § | |
| IMPORTS, INC. § | |
| § | |
| Defendants. § | |

MEMORANDUM AND ORDER AND STAY OF PROCEEDINGS

Pending are Defendants Echostar Satellite, L.L.C.'s and Echosphere, L.L.C.'s Combined Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, and Alternatively, Motion to Stay or Dismiss Action Pending Arbitration, Motion to Transfer Venue, and Motion for a More Definite Statement (Document No. 38) and Defendant Recreational Sports and Imports, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Motion to Stay or Dismiss Action Pending Arbitration, and Alternatively, Motion to Transfer Venue (Document No. 39).[1] After carefully

---

[1] Defendant Recreational Sports and Imports, Inc.'s previous Motion for a More Definite Statement and Motion to Dismiss or Motion to Transfer Venue (Document No. 5), which is superseded by its more recent filing, is DENIED AS MOOT. Defendants Echostar Satellite, L.L.C.'s and Echosphere, L.L.C.'s previous Combined

considering the motions, responses, replies, and the applicable law, the Court concludes as follows:

I. <u>Background</u>

Plaintiff Century Satellite, Inc. ("Century") brings this diversity action against Defendants Echostar Satellite, L.L.C. ("Echostar"), Echosphere, L.L.C. ("Echosphere"), Mid-State Distributing Company, Inc. ("Mid-State"), and Recreational Sports and Imports, Inc. ("RS&I") for breach of contract, unjust enrichment, and/or conversion.

Century alleges that, pursuant to a series of annual agreements, it served as a non-exclusive satellite dish and programming retailer for Echostar and/or Echosphere from October, 1999, through March 23, 2004. Under these agreements, Century explains, it installed or caused the installation of certain satellite equipment for consumers. Echostar provided satellite programming directly to the consumers, while Echosphere supplied

---

Motion to Dismiss for Failure to State a Claim, and Alternatively, Motion to Stay or Dismiss Action Pending Arbitration, Motion to Transfer Venue, and Motion for a More Definite Statement (Document No. 13) is likewise superseded by their more recent filing, and is therefore DENIED AS MOOT.  Also, Defendant Mid-State has now answered Plaintiff's First Amended Complaint without simultaneously reurging or refiling its previous motion to dismiss and/or compel arbitration, which was based on Century's Original Complaint. Accordingly, Defendant Mid-State Distributing Company, Inc.'s Motion to Dismiss for Failure to State a Claim, or Alternatively, Motion to Compel Mediation and Arbitration and to Dismiss or Stay the Case (Document No. 21) is DENIED AS MOOT.

Century with the requisite satellite equipment through designated regional distributors, Mid-State and RS&I.

According to Century, part of its compensation under the annual agreements--as well as other oral agreements, "business rules," and the parties' course of dealing--consisted of an incentive/residual ("residual payment"), that is, a payment for each consumer to whom Century sold satellite programming, which payment lasted for the "lifetime" of the customer account.  Each month for approximately four years, Century alleges, Echostar and/or Echosphere made these residual payments to Century through Mid-State.  In February, 2004, RS&I allegedly replaced Mid-State as regional distributor.

On March 23, 2004, Century received a written termination notice stating that, effective immediately, it "hereby terminates both Non-Incentivized Retailer Agreements with [Century] between [Mid-State] and [RS&I]," on grounds that Century had violated "paragraph 9.4 of the Agreement."  *See* Document No. 31 ex. D.[2]  After the termination, Century alleges, it received no residual payments and was forced to close its business.  Echostar then initiated arbitration proceedings against Century on June 21, 2004, and Century thereafter filed this lawsuit.

---

[2] Counsel for Echostar explained at a hearing that Echostar believed Century had violated the agreement by advertising the services of a competitor.

In its First Amended Complaint, Century alleges that the termination of its retailer services by Echostar and/or Echosphere, "acting individually or in concert with other Defendants, was wrongful and constitutes a breach of contract." See id. ¶ 5.1. Century contends that it was never in default of any written or oral agreement between the parties, business rules, or courses of dealing. Alternatively, Century pleads, Defendants failed to provide a mandatory notice of default and opportunity to cure. Moreover, Century argues, Defendants' failure to make any further residual payments is itself a breach of contract, or at least unjust enrichment and/or conversion with respect to accounts that were attributable to Century's services and were active beyond January, 2004. Century pleads for damages, costs, and attorney's fees. Echostar, Echosphere, and RS&I (collectively, "Defendants") now move for dismissal for failure to state a claim, an order compelling arbitration and staying or dismissing Century's arbitrable claims, or alternatively, a transfer of venue or a more definite statement.

II. Discussion

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), but also request an order compelling arbitration and staying or dismissing Century's arbitrable claims. If Century's Amended Complaint asserts claims falling within the scope of a

valid arbitration agreement, then the parties must proceed to arbitration on those claims without a judicial determination on the merits thereof.  *See* Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218-19 (5th Cir. 2003); Snap-On Tools Corp. v. Mason, 18 F.3d 1261, 1267-68 (5th Cir. 1994).  Accordingly, Defendants' motions to compel arbitration must be considered first.

A.   Arbitration

It is uncontroverted that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., applies to the arbitration agreements at issue in the instant case.[3]  The FAA "provides for district courts to stay legal proceedings on issues referable to arbitration, 9 U.S.C. § 3, and empowers the courts to compel arbitration of arbitrable issues, 9 U.S.C. § 4."  Hartford Lloyd's Ins. Co. v. Teachworth, 898 F.2d 1058, 1061 (5th Cir. 1990).

Under the FAA, "[a] two-step inquiry governs whether parties should be compelled to arbitrate a dispute.  'First, the court must determine whether the parties agreed to arbitrate the dispute.  Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims

---

[3] "[T]he [Federal Arbitration Act] applies to 'a written agreement to arbitrate in any contract involving interstate commerce.'"  Prescott v. Northlake Christian Sch., 369 F.3d 491, 495 (5th Cir. 2004)(quoting Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 109 S. Ct. 1248, 1253 (1989)); *see* 9 U.S.C. § 2.

non-arbitrable.'" <u>Banc One Acceptance Corp. v. Hill</u>, 367 F.3d 426, 429 (5th Cir. 2004) (quoting <u>R.M. Perez & Assoc., Inc. v. Welch</u>, 960 F.2d 534, 538 (5th Cir. 1992)).  The first step requires the court to determine according to state law (1) whether the parties have a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that arbitration agreement.  *See* <u>id.</u>  Although a strong federal policy favors arbitration, the policy does not apply to the initial question of whether there is a valid agreement to arbitrate.  *See* <u>id.</u>  Once a court determines that an arbitration agreement exists, however, the court "must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration."  <u>Id.</u>

Two of the agreements that Century attaches to and relies upon in its Amended Complaint contain very similar arbitration provisions.  An "Authorized Retailer Agreement" between Century and RS&I states in relevant part:

> ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS BETWEEN [CENTURY] AND/OR ANY OF ITS AFFILIATES, ON THE ONE HAND, AND RS&I AND/OR ANY OF ITS AFFILIATES, ON THE OTHER HAND, INCLUDING WITHOUT LIMITATION ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO THE VALIDITY OF SECTION 17.3, THE CIRCUMSTANCES CONCERNING THE EXECUTION OF THIS AGREEMENT, AND ALLEGATIONS OF FRAUD IN THE INDUCEMENT, OR WHICH RELATE TO THE PARTIES' RELA-TIONSHIP WITH EACH OTHER OR EITHER PARTY'S COMPLIANCE WITH ANY STATE OR FEDERAL LAW, WHICH ARE NOT SETTLED THROUGH NEGOTIATION, THE CLAIM PROCESS ABOVE, OR THE MEDIATION PROCESS SET FORTH ABOVE, SHALL BE RESOLVED SOLELY AND EXCLUSIVELY BY BINDING ARBITRATION IN ACCORDANCE WITH BOTH THE SUBSTANTIVE AND PROCEDURAL LAWS

OF TITLE 9 OF THE U.S. CODE ("FEDERAL ARBITRATION ACT")
AND THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN
ARBITRATION ASSOCIATION.

Document No. 31 ex. C, at 18. Likewise, an "Incentivized Retailer Agreement" between Century and Echostar contains a nearly identical provision applying to "any and all disputes, controversies or claims" between Century, Echostar, and/or their respective affiliates, "including without limitation any and all disputes, controversies, or claims arising out of or in connection with this Agreement . . . or which relate to the parties' relationship with each other. . . ." Id. ex. B, at 13.[4]

The foregoing language, which encompasses not only disputes, controversies, and claims "arising out of" the respective Retailer Agreements, but those "in connection with" the Retailer Agreements, or which "relate to the parties' relationship with each other," is broad and expansive. *See* Pennzoil Exploration and Prod. Co. v. Ramco Energy, Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) ("[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are

---

[4] Echostar questions the validity of the "Incentivized Retailer Agreement" and suggests that certain "Non-Incentivized Retailer Agreements"--which contain virtually identical arbitration provisions--may be the proper documents at issue. *See* Document No. 38 n.3. Nonetheless, assuming the validity of the "Incentivized Retailer Agreement," Echostar relies upon the broad arbitration clause in that agreement in support of its motion to compel arbitration.

connected with' the contract."). Thus, Century's claims against RS&I and Echostar for breach of contract, unjust enrichment, and conversion--all of which are made "in connection with" the Authorized and/or Incentivized Retailer Agreements, and which "relate to the parties' relationship with each other"--fall squarely within the scope of the foregoing arbitration provisions. *Cf.* Personal Security & Safety Sys., Inc. v. Motorola Inc., 297 F.3d 388, 392 (5th Cir. 2002) ("[A] valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.") (internal quotations omitted).[5]

Similarly, Century's claims against Echosphere, which mirror those against Echostar, also fall within the scope of the Incentivized Retailer Agreement's arbitration provisions. Indeed, it is uncontroverted that Echosphere is an "Affiliate" of Echostar as that term is used in those provisions. *See* Document No. 31 ex. B, at 2, 13. Furthermore, the fact that Echosphere is not a signatory to the Incentivized Retailer Agreement does not preclude it from invoking the arbitration provisions therein:

---

[5] In bringing its claims, Century purports to rely not only on the Retailer Agreements discussed above, but on other "oral agreements," "business rules," and "course[s] of dealing." *See* Document No. 31, at 7. However, these claims still "relate to the parties' relationship with each other," and, insofar as they implicate the integration clauses of the Retailer Agreements, are claims made "in connection with" with Retailer Agreements. *See* id. ex. B, at 15; ex. C, at 19.

> There are two circumstances under which a nonsignatory can compel arbitration.  First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.  Second, when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

<u>Westmoreland v. Sadoux</u>, 299 F.3d 462, 467 (5th Cir. 2002); *see* <u>Hill v. Gen. Elec. Power Sys., Inc.</u>, 282 F.3d 343, 348 (5th Cir. 2002); <u>Grigson v. Creative Artists Agency, L.L.C.</u>, 210 F.3d 524, 527 (5th Cir. 2000).  In this case Century at least in part relies on the Incentivized Retailer Agreement in asserting its claims against Echosphere.  *See, e.g.*, Document No. 31 ¶ 5.1.  Moreover, Century alleges that "two or more of the Defendants acted . . . in concert and/or in joint enterprise in bringing about the causes of action and damages made the subject matter of this suit."  <u>Id.</u> ¶ 4.9.  Thus, allowing Echosphere to invoke the Incentivized Retailer Agreement's arbitration provisions against Century would not "'fly in the face of fairness.'"  <u>Hill</u>, 282 F.3d at 349 (quoting <u>Grigson</u>, 210 F.3d at 528).

Century's response essentially is that requiring it to arbitrate would be unconscionable, that the costs of doing so would prove prohibitive, and that the arbitration provisions are so vague and ambiguous as to be unenforceable.  Century argues that enforcing the arbitration agreements would be "unconscionable"

because the Incentivized Retailer Agreement requires it to arbitrate in Colorado, while the Authorized Retailer Agreement requires it to arbitrate in Idaho. The fact that two separate agreements into which Century has entered each has an arbitration clause, but with each designating a separate location for the arbitration to be conducted, does not make either agreement legally "unconscionable." Moreover, RS&I has judicially admitted that it will arbitrate with Century and the other Defendants in Denver, Colorado, rather than Idaho Falls, Idaho. *See* Document No. 39, at 2 n.2. Century has not expressed opposition to this practical resolution, which fully resolves Century's earlier concerns about attending simultaneous arbitrations in two forums.

Century also argues that it cannot bear the anticipated financial burden of arbitration, and that requiring it to arbitrate would thus deprive it of a remedy. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such [prohibitive] costs." Green Tree Fin. Corp.-Alabama v. Randolph, 121 S. Ct. 513, 522 (2000); see American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 711 (5th Cir. 2002). Century asserts that it would incur some $11,250 in filing and service fees, and states that the cost for arbitrators could potentially exceed $30,000. Century posits no argument that such costs are unreasonable for arbitration of its

claim to recover up to $2.5 million in damages.  Instead, Century's president David Campbell avers only that Century, having closed for business, "has no operating or other funds upon which to draw in order to pursue proceedings against Defendants."  Document No. 19, Campbell Aff.  Campbell makes no representation, however, as to Century's total assets or other resources, and provides no information regarding its corporate structure, whether it is closely held, and what ability it has to raise the needed funds to pursue its sizable claims.  Likewise, Century submits no balance sheets, audited financial statements, or other proof to establish its total financial capability.

Furthermore, the arbitration provisions at issue provide that the costs of arbitration, including administrative and other fees, will ultimately be paid by the "party(ies) determined by the arbitrators to not be the prevailing party(ies), or otherwise allocated in an equitable manner as determined by the arbitrators." Document No. 31 ex. B, at 13-14; *see* id. ex. C, at 18.  In a similar situation, the Fifth Circuit held that "the question of which party to the arbitration will ultimately prevail at arbitration is subject to speculation only and, therefore, is not a basis to hold the Agreements unenforceable."  Orr, 294 F.3d at 712.  Moreover, as the Fifth Circuit pointed out in Orr, "the rules of the [American Arbitration Association] provide [Century] sufficient avenues to request fee-paying relief, if necessary."

Id. Century has not carried its burden of showing that it is likely to incur prohibitive expenses by proceeding to the arbitration to which it agreed.

Finally, Century contends that the arbitration provisions are vague and ambiguous because they provide that the rules of the American Arbitration Association ("AAA") apply, but then prescribe a specific method for the manner in which arbitrators are to be chosen. Century cites no legal authority in support of this argument, and it is without merit. The Court takes judicial notice that the AAA's Commercial Arbitration Rules allow for the appointment of arbitrators in accord with a method specified by agreement of the parties. *See* R-12, Commercial Arbitration Rules and Mediation Procedures (July 1, 2003), *available at* http://www.adr.org/sp.asp?id=22440 (last visited June 16, 2005).

In light of the foregoing, Century's claims against Defendants fall within the scope of valid, enforceable arbitration agreements, and Defendants are entitled to invoke those agreements.[6] Century will be compelled to proceed to arbitration on its claims against Defendants in Denver, Colorado, in accord with the arbitration

---

[6] It is uncontroverted that all conditions precedent to arbitration under the Retailer Agreements, such as mediation, have been performed and/or complied with.

provisions of the Incentivized Retailer Agreement and Authorized Retailer Agreement.[7]

B.   Stay of Proceedings

Title 9 U.S.C. § 3 provides that where suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court, upon being satisfied that the issue involved is indeed referable to arbitration under the agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant

---

[7] Title 9 U.S.C. § 4 provides that arbitral proceedings "shall be within the district in which the petition for an order directing such arbitration is filed." The Fifth Circuit, however, has declined strictly to apply this rule where a party seeking to avoid arbitration brings suit outside the district where arbitration is to take place:

> [W]here the party seeking to avoid arbitration brings a suit for injunctive relief in a district other than that in which arbitration is to take place under the contract, the party seeking arbitration may assert its Section 4 right to have the arbitration agreement performed in accordance with the terms of the agreement.

Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275, 1278 (5th Cir. 1975); see also Municipal Energy Agency of Miss. v. Big Rivers Elec. Corp., 804 F.2d 338, 344 (5th Cir. 1986); National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 331 (5th Cir. 1987); Automated Tec. Machines, Inc. v. Diebold, Inc., No. CIV.A. 01-2777, 2002 WL 1009471, at *2-3 (E.D. La. May 15, 2002)(unpublished)(determining that under Dupuy-Busching, the court could compel arbitration of state law claims in Ohio). Similarly, since Century's instant action is an attempt to avoid an arbitration proceeding initiated by Echostar, the principles of Dupuy-Busching apply.

for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; *see* Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339, 341-42 (5th Cir. 2004). Defendants' request is GRANTED for a stay of further proceedings against them in this case pending the outcome of the arbitration. In addition, pursuant to the Court's inherent powers and to avoid unnecessary, duplicative litigation that may as a practical matter be resolved in the arbitration, all further proceedings in this case regarding Century's claims against Mid-State are also STAYED pending the outcome of the arbitration in Denver.

### III. Order

Based on the foregoing, it is

ORDERED that Defendants Echostar Satellite, L.L.C.'s and Echosphere, L.L.C.'s Combined Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, and Alternatively, Motion to Stay or Dismiss Action Pending Arbitration, Motion to Transfer Venue, and Motion for a More Definite Statement (Document No. 38) and Defendant Recreational Sports and Imports, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Motion to Stay or Dismiss Action Pending Arbitration, and Alternatively,

Motion to Transfer Venue (Document No. 39), are GRANTED IN PART as follows:

1. Plaintiff Century Satellite, Inc. shall proceed to arbitration on its claims against Defendants Echostar Satellite, L.L.C., Echosphere, L.L.C., and Recreational Sports and Imports, Inc. in Denver, Colorado, in accord with the terms of the arbitration provisions in the March 1, 2004, Incentivized Retailer Agreement and February 2, 2004, Authorized Retailer Agreement.

2. All further proceedings in this case are STAYED pending the outcome of the foregoing arbitration.

3. Those parties proceeding to arbitration shall, within six months after the date of entry of this Order, and at successive intervals of six months thereafter, file a joint status report to advise the Court on the progress of the arbitration.

The foregoing motions are in all other respects DENIED. It is further

ORDERED that Defendant Recreational Sports and Imports, Inc.'s Motion for a More Definite Statement and Motion to Dismiss or Motion to Transfer Venue (Document No. 5), Defendants Echostar Satellite, L.L.C.'s and Echosphere, L.L.C.'s Combined Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, and Alternatively, Motion to Stay or Dismiss Action Pending Arbitration, Motion to Transfer Venue, and Motion for a More Definite Statement (Document No. 13), and Defendant Mid-State Distributing Company, Inc.'s Motion to Dismiss for Failure to State a Claim, or Alternatively, Motion to Compel Mediation and

Arbitration and to Dismiss or Stay the Case (Document No. 21) are DENIED AS MOOT.

The Clerk will enter this Order and send copies to all parties of record.

SIGNED at Houston, Texas on this 23rd day of June, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE